**COMMERCIAL ZONE (NILES), Establishment of, In re.**

Public Utilities Commission.

No. 26094.   Decided August 12, 1957.

This day, this matter came on for consideration upon the petition of The Cleveland, Columbus & Cincinnati Highway, Inc. to establish a Commercial Zone for the City of Niles, Ohio; the appearance of intervenors; the report and recommendation of Attorney Examiner Eugene J. Nolan, dated October 10, 1956; the exceptions to said report filed

by Aetna Freight Lines, Inc., also by Komray & Bock, Inc., Burbank Van & Storage, Inc., J. M. Barbe Co., The Youngstown Cartage Co. and Mahoning Express Company, intervenors herein; the reply to said exceptions filed by The Cleveland, Columbus & Cincinnati Highway, Inc., et al; the request for oral argument, and the testimony and exhibits offered and introduced in evidence upon said hearing.

The Commission, being fully advised in the premises, and in compliance with §4903.09 R. C., hereby renders the following opinion:

**SUMMARY OF THE EVIDENCE:**

The Commission hereby adopts as its own, as if fully rewritten herein, the "Summary of the Evidence" as contained in the written report of the Attorney Examiner, dated October 10, 1956.

**FINDINGS OF FACT AND LAW**

The Commission after oral argument, and upon consideration of the exceptions filed herein, the reply thereto, and all matters at issue, submits the following Discussion, which Discussion is pertinent to Case No. 26,094, being the instant application, and Case No. 26,363 and Case No. 26,095, which cases were consolidated for public hearing.

**COMMISSION'S DISCUSSION**

As used throughout this order the term "APPLICANT," refers to those parties who support the findings of the Attorney Examiner.

"PROTESTANT," as so used, refers to all parties who object to the findings of the Examiner.

These cases arise out of petitions, filed by holders of presently existing Certificates of Public Convenience and Necessity, in the Cities of Youngstown, Niles, and Waren requesting the enlargement (in the case of Youngstown) and the establishment (in the cases of Warren and Niles) of commercial zones about said cities. The cases were consolidated for public hearing and were heard upon joint record by Attorney Examiner Eugene J. Nolan.

In his Report and Recommendation Attorney Examiner Nolan recommended that the Youngstown Zone be expanded and that zones be created about the Cities of Niles and Warren.

Exceptions were filed to the report of the Attorney Examiner and, at the request of the parties, an oral argument was held upon such Exceptions.

It appears that the objections raised by Protestants by way of Exceptions, as well as their objections stated during the course of the Oral Argument, may be classified in two basic categories as follows:

I. Complaints which relate to the actual physical area of the Zones recommended by the Attorney Examiner.

II. Complaints which allege that the zones as recommended by the Attorney Examiner do not grant "reciprocal" rights. (i. e. do not grant operating rights to serve the cities in question as well as the zone to existing certificated holders who hold operating rights out in the area now being included in the commercial zone.)

As to the first issue, namely, the area question, the Commission finds that the recommendation of its Attorney Examiner in each of these three zones is proper. As to this aspect of these cases the report should be adopted.

Protestants have requested specificially that the Village of Mineral Ridge be included in one or more of the zone areas. The Protestants also request that McDonald, Ohio, now located in the Youngstown Commercial Zone, also be included in the Niles zone.

There is likewise a pending request that certain township area, not now included in the recommended zone for Niles, be included.

As to all of these complaints and allegations, it is sufficient to state that the Commission has thoroughly reviewed the transcript of evidence made at the public hearing as well as the arguments made by Protestants at Oral Argument by way of objections to findings of the Examiner. Having made this review the Commission finds no basis for disturbing the Examiner's findings with respect to the zone areas. There appears to be little probative evidence of record to substantiate the request of expansion of the zone areas beyond that recommended by the Examiner. The very purpose of creating or expanding commercial zones is to make available to shippers who, because of geographical location, business interest, shipping or receiving requirements, need, although they are actually outside the governmental corporate limits of a municipal corporation, the same type and character of motor transportation service which shippers or receivers within such municipal corporation enjoy. It was never contemplated that §4921.26 R. C., be used as an automatic device by carriers to expand their operating territories; such section exists for the benefit of shippers and receivers and to meet their needs.

This raises the question of the meaning of the term "commercially a part of" as the same is used in §4921.26 R. C. The opinion of the Ohio Supreme Court in Beiter Lines v. P. U. C. O., 165 Oh St 1, has clearly established that it is not necessary to meet the strict test of Public Convenience and Necessity in a commercial zone case. There must, however, be some kind of a demand or requirement on the part of shippers or receivers of freight in the proposed zone area for the new expanded service. Mere showing of "community of interest" in such things as banking, telephone service, a gas or water supply, is not enough. To hold otherwise would be folly; for how could expanding motor carrier service be justified if there has been no showing of any kind that it would be used. As it is used in .§4921.26 R. C., "COMMERCIALLY A PART OF" really means "COMMERCIALLY A PART OF FOR TRANSPORTATION PURPOSES." Judged in this light, it appears that these requests for further expansion of zone areas are actually made by carriers for their own benefit and for enlargement of their operating rights without reference to shipper requirements: such requests are not substantiated by enough sufficient, substantial, and competent testimony to indicate that the disputed areas are "commercially a part" of the municipal corporation in question.

It is readily apparent that the latter of the two objections which were raised at the Oral Argument is the more basic. It goes to the power and jurisdiction of this Commission to create and delimit commercial zones in the first instance. It requires an interpretation of the statute itself. The commercial zone statute (§4921.26 R. C.), reads as follows:

"Where industrial plants or other enterprises are located in a district which is outside but commercially a part of any municipal corporation, the Public Utilities Commission, on its own motion or on petition of any interested common carrier by motor vehicle or shipper, may, after investigation, notice, and hearing, determine and fix the limits of a zone surrounding such municipal corporation, and may include in such zone any adjacent territory, incorporated or unincorporated, which it finds commercially a part of such municipal corporation. Upon and after the effective date of an order establishing any such commercial zone, all common carriers by motor vehicle transporting property over regular or irregular routes **and authorized to serve such municipal corporation** as a point of origin and destination of shipments shall, by virtue of and in accordance with such order, serve such commercial zone in the same manner and to the same extent as they are authorized by their respective certificates to serve such municipal corporation. The Commission may attach such conditions to any such order as, in its judgment, the public convenience and necessity requires. The Commission shall give to all such common carriers so authorized to serve such municipal corporation at least ten days' written notice of the time and place of any hearing had under this section. The Commission may prescribe appropriate forms and rules for the administration of this section." (Emphasis supplied.)

Relying upon one single portion of that statute, which has been emphasized for the purpose here, the Applicants assert that the Public Utilities Commission is without jurisdiction to make any commercial zone reciprocal (i. e. to allow carriers located out in the zone to serve it). They assert that only those carriers who hold operating rights in the municipal corporation about which a zone is being created may be authorized to serve the commercial zone. As indicated, they rely for support of this proposition upon the one sentence of the statute which has been emphasized.

The Commission finds that it cannot agree with the position of these Applicants. To so hold would actually be to emasculate the provisions of the statute itself and frustrate the very aims sought by its enactment. Further, it would result in gross inequities to all affected parties and might even create deficiencies in service. The Commission finds instead that, under the very wording of the statute itself it has ample power and authority to make commercial zones which it creates reciprocal. That authority is specifically granted to the Commission by the closing language of §4921.26 R. C., which reads as follows:

"The Commission may attach such conditions to any such order as, in its judgment, the public convenience and necessity requires."

This provision of the statute invests this Commission with the broadest type of discretionary power and requires it to exercise that judgment in creating commercial zones:

The Applicants have also challenged the "reciprocal" provisions of Administrative Order No. 155, which promulgates Rule of Practice No. 28. In effect, the Applicants ask its repeal or modification. It is the finding of this Commission that the provisions of its presently existing Administrative Order No. 155, which promulgates Rule 28 and provides that all zones shall be reciprocal is proper and is hereby reaffirmed.

There are several compelling reasons which necessitate that a commercial zone be reciprocal. The first and foremost of these is that the granting of reciprocity in a zone makes the service of common carriers throughout the zone uniform in its operations and availability. It is always in the best interest of shippers or receivers of commodities that the most flexible type service be made available to them. Reciprocity guarantees this. Finally, it is more equitable and fair to the common carriers themselves that zones be made reciprocal.

As the Supreme Court of Ohio indicated in its opinion on commercial zones, **Beiter Lines v. P. U. C. O., 165 Oh St 1**, the creation of commercial zones is in many ways analogous to annexation. When a given area is annexed to a corporation it thereafter enjoys all the benefits of other citizens of the municipal corporation. In addition thereto any special services or facilities which it already had are likewise now available to the residents of the existing municipal corporation. Such a system certainly should prevail in commercial zone cases. If reciprocity is not given a situation results in which a given city is served by a certain number of common carriers (by way of example, say 10) while the outlying area after a commercial zone is created is thereafter served by those 10 city carriers plus whatever transportation services might have already been available in the area. Thus, it results that certain areas in the newly created commercial zone might have 14 or 15 carriers, whereas the formerly existing city has only its original 10 carriers. Certainly the statute never contemplated that the creation of a commercial zone would confer such irregular and spasmodic service upon the zone area and would actually end in a situation in which the new area has more service than the old. When it is remembered that the creation of a commercial zone also creates an added burden and imposes an additional duty upon the city carriers to serve the new commercial zone and thus, to that extent at least, decreases the availability of their service to the existing city, it should be clear that it is in the best interest of all concerned to make available to the existing city whatever facilities are already available in the area which has now been incorporated into the commercial zone.

As stated previously it is beyond question that these commercial zones are always created for benefit of the shipping public rather than the carriers. The creation of a commercial zone without reciprocity makes the service which any given shipper in the zone will have dependent upon a mere accident. It is doubtful if such was the intent of the statute.

Finally, it is in the public interest to promote a sound transportation system, this requires that commercial zones be made reciprocal. To do so tends to equalize competition and to avoid unfair and unnecessary competition to carriers already located in an area which becomes incorporated into a commercial zone. If reciprocity is not given, such a carrier suddenly finds himself faced with intense competition from many new carriers located in the municipal corporation, while he, himself, is without any new markets or areas in which to offer his service. If reciprocity is granted, however, although he does face greatly expanded competition, he nevertheless finds his own operative area ex-

panded to a considerable extent and is thus able to recoup some of the business which may be lost to new carriers. The entire process is one of equalization resulting in fairness to all carriers concerned and, parenthetically, in a more adequate and sound transportation system.

For all the above enumerated reasons the Commission finds that, insofar as the reciprocity issue is concerned, the previously issued Rule No. 28 which states that all commercial zones shall grant reciprocal rights is a valid rule and should not be disturbed. It finds, further, that it had and has adequate authority, power and discretion to promulgate such a rule.

Applying the reasoning set forth above to the situation at hand, therefore, the Commission finds that: (1) the actual physical zone areas delineated and described by the Examiner in his recommendation are proper as to this part of the case and the Examiner should be affirmed.

(2) With regard to the reciprocity feature of this case, the Commission finds that it cannot concur with its Examiner and finds instead that the areas which he recommended as being made commercially a part of the three cities in question should be served by all carriers located in any portion of the zones to the full extent of the operating authority of such carriers. Therefore, existing restrictions against serving municipalities in question should be lifted from the certificates of all carriers located at and authorized to serve any part of the zone. All carriers located in the zone should be authorized to serve all parts of such zone to the same extent as municipal carriers. Motor transportation service should be uniform and equal to and between all parts of a commercial zone, including the municipality around which the zone is created.

**ULTIMATE FINDINGS:**

The Commission, being fully advised in the premises, now finds:

That the Commission has jurisdiction to hear and determine the issues presented;

That there exists an area adjacent to the City of Niles, Ohio, which is commercially a part of said municipal corporation, in which are located industrial plants and other enterprises, and it is in the public interest that a Niles, Ohio, Commercial Zone be established;

That motor transportation service should be uniform and equal to and between all parts of the Commercial Zone, including the municipality around which the Zone is created;

That all common carriers transporting property over regular or irregular routes authorized to serve Niles, Ohio, or any part of the herein established zone, should be authorized to serve the Niles, Ohio, Commercial Zone to the same extent as they are authorized to furnish service under their respective certificates;

That under §4921.26 R. C., a Commercial Zone for Niles, Ohio, should be established, and that said Commercial Zone shall consist of the territory embraced within the following metes and bounds description:

"Commencing at a point on the East bank of the Mahoning River at

a point due east of DeForest Town Line Road (CR 69); thence due east to DeForest Town Line Road; thence east along DeForest-Town Line Road (CR 78) to Heaton-North Road (CR 54); thence north on Heaton-North Road (CR 54) to US 422; thence south on US 422 to northerly city limits of Girard; thence west and south along city limits of Girard to Watson-Marchall Road (CR 60); thence north, west and south along city limits of McDonald to junction with Ohltown-McDonald Road (CR 58); thence Southwest on Ohltown-McDonald Road (CR 58) to Salt Springs Road (CR 64) thence northwest on Salt Springs Road (CR 64) to Austintown-Warren Road (CR 67); thence north on Austintown-Warren Road (CR 67) to Brunstetter-Niles Road (CR 68); thence east on Brunstetter-Niles Road to the east bank of the Mahoning River; thence north along the east bank of the Mahoning River to the point of beginning."

The Commission further finds:

That certain irregular route common carriers are presently authorized to transport property from and to specifically named points in the Niles area, including intervening unincorporated territory between such named points and Niles, Ohio, which area is now being incorporated in the Niles Commercial Zone under the provisions of this order. However the operating authority under Certificates Numbers 1214-I, 1952-I, 1352-I, 501-I, 2388-I and 1092-I is presently restricted against serving Niles, and to make the provisions of this order establishing the Niles, Ohio, Commercial Zone operative in its full scope, said restrictions with respect to Niles should be modified or made inapplicable so long as the Niles Commercial Zone is in effect.
It is, therefore

ORDERED, That, effective 12:01 o'clock A. M., Eastern Standard Time, October 1, 1957, the territory bounded as herein described is declared to be the Niles, Ohio, Commercial Zone, and all certificated motor transportation companies authorized to serve Niles, Ohio, or any part or point located within such Zone are required to render service to the aforesaid described area located within such Zone in the same manner and to the same extent as they are authorized to furnish service under their respective certificates. It is, further

ORDERED, That Certificates Numbers 1214-I, 1952-I, 1352-I, 501-I, 2388-I and 1092-I be amended by setting forth therein the following condition—

"CONDITIONED, That during the effective period of the Niles, Ohio, Commercial Zone, the restriction with respect to serving Niles, Ohio, shall not be applicable."
It is, further

ORDERED, That a copy of this order shall be forthwith served upon every motor transportation company authorized to serve Niles,

Ohio, or any part or point within the herein described Commercial Zone.

                                        THE PUBLIC UTILITIES COMMISSION OF OHIO
Entered in the Journal                                                  Chairman
August 12, 1957                    Ralph A. Winter
A true copy:                       Edward J. Kenealy
W. E. Herron, Secretary                                           Commissioners

### CONCURRING OPINION OF CHAIRMAN KRUEGER

No. 26094.   Decided August 12, 1957.

This matter was heard jointly by the Attorney Examiner, and decided by the Commission upon the consolidated record, with Case No. 20,363, In The Matter Of The Extension Of The Commercial Zone Surrounding The City Of Youngstown, Ohio, And Case No. 26,095, In The Matter Of The Establishment Of A Commercial Zone Comprised Of The City of Warren, Ohio, And The Industrial Territory Adjacent To And Commercially A Part Thereof.

Although different factual situations as to the Scope of the respective commercial zones are involved in each of these cases, basically comparable questions of law are attendant thereto.

No exception whatsoever is taken to the findings of fact reached by the majority opinions in these three proceedings insofar as such findings apply to the factual efficacy of the establishment of said zones and the geographical scope of the commercial zones thus established. These findings of fact appear to be well substantiated by the weight of the evidence upon the joint record herein.

It is believed, however, that prospective administrative determination by this Commission might well be clarified by explanatory review and qualifications herein of certain of the conclusions of law drawn by the respective majority opinions in these three orders.

First, the majority opinion construes the term "commercially a part of," as employed in §4921.26 R. C.; to mean "COMMERCIALLY A PART OF FOR TRANSPORTATION PURPOSES." This construction is predicated upon the majority's interpretation of the Ohio Supreme Court's recent decision in Beiter Lines v. P. U. C. O., 165 Oh St 1, the leading case substantiating the extent of this Commission's power to establish and enlarge commercial zones under the aforecited §4921.26 R. C. Such descriptive limitation upon this statutory language is apparently bottomed on dicta contained in the Court's unanimous opinion written by Hart, J., because the syllabus of that case does not so qualify the term in question.

Insofar as the majority's qualifying construction of this term is restricted and applied to the determination by the Commission of the geographical boundaries of commercial zones, such interpretation would appear, as a matter of law, to be implicit in the purpose and provisions of enabling §4921.26 R. C. Moreover, it accords administratively with the basic premises of the legislative transportation policy of this State, as enunciated in §4921.03 R. C., by which the public interest is declared to be paramount.

The majority opinion, it may be claimed, is not expressly specific as

to the degree of "a demand or requirement on the part of shippers or receivers of freight in the proposed zone area . . ." which should be manifested. It is apparent from the majority opinions that this degree is less than evidence of "convenience and necessity" and more than a "mere showing of 'community of interest'" as delineated by those opinions. More specificity in this regard, however, would not be practicable nor possible because both the efficacy and scope of each proposed commercial zone must be determined by the Commission upon the facts peculiar to that zone proceeding. In any event, this construction is more definite then than the "community of interest" guidepost previously employed in Commission commercial zone determinations and should assure public shipper-receiver representation and testimony in these zone proceedings.

Seconly the majority opinions in these three cases restate and apply the Commission's policy with respect to the automatic granting of so-called "reciprocity" or reciprocal rights to all carriers holding authority at any peripheral point or area in a proposed zone, as well as to those carriers holding authority within the municipalities about which a commercial zone is proposed to be created, to serve the entire area encompassed within the established commercial zone. This fixed policy of "reciprocity" was effected by the Commission in Rule No. 28 of its Administrative Order No. 155, under date of October 11, 1956. This rule reads in part pertinent hereto as follows:

"Reciprocal rights to serve each commercial zone created by this Commission shall be extended to all carriers holding authority at any point in the zone as well as to those carriers holding authority within the municipality about which a zone is being created.

"No restrictions of any kind shall be imposed upon the authority of carriers located in a commercial zone to serve that zone other than those restrictions and limitations already contained in their specific certificates. No restrictions contained in existing certificates shall be removed or changed by virtue of the establishment of a commercial zone."

It is evident that the above-quoted provisions of this Administrative Order possess the weight of existing law until decreed to be unlawful in whole or in part by the Supreme Court of Ohio, otherwise amended administratively by this Commission, or until subsequent legislative enactments would modify substantively aforesaid §4921.26 R. C., upon which these provisions are predicated. Thus, it follows that each and every member of this Commission is bound by this administratively adopted policy of "reciprocity" until it would be changed as above indicated.

It does not follow, however, that any Commissioner's divergence of opinion as to the regulatory application or propriety of the policies fixed by this or any other Administrative Order may not be expressed by way of a concurring opinion.

Exception is taken, therefore, to this Commission's present policy of automatically granting reciprocal rights to all "peripheral" motor carriers to serve the municipality and other territory around which a new commercial zone is established in those instances where such peripheral carriers were not authorized, previous to the establishment of said zone,

to serve that municipality or other territory subsequently encompassed within a newly created or enlarged zone.

A like exception is taken to the similarly fixed policy of automatically granting reciprocity to all of the municipally situated carriers to serve the entire area, including every point or specific territory, encompassed within a newly established or enlarged commercial zone.

Generally, it may well be lawful and administratively sound to grant such enhanced operating rights to all carriers, authorized to operate within any areas or from any point encompassed within a newly created zone, to provide transportation services throughout that zone. Nonetheless, for the Commission to follow such a fixed policy is to seemingly abdicate the exercise of its discretion, unless the dictates of regulation in the public interest should demand the adoption of such an immutable policy  In this instance, however, both the legal and policy propriety of such extensions of the operating rights of these peripheral carriers would seem to be better bottomed upon the commercial motor transportation requirements manifested by the record in each commercial zone proceeding rather than upon a fixed and preconceived policy of automatically granting the extension of said rights in each case, irrespective of the state of the record therein.

Uniformity in the quality and quantity of motor transportation service throughout a newly established commercial zone, no doubt, is in the public interest in many instances and may well be served through the granting of reciprocity.  However, uniformity should not be implemented on the basis of averments of equity or on supposition but, rather, should be predicated on an evidentiary showing that such uniformity will not only be in the interest of shippers and receivers of motor freight but will promote sound competition by and between the motor carriers involved.

For example, in those instances where commercial zone proceedings may be initiated by peripheral carriers with a view to extending their authority within the more monetarily lucrative boundaries of an adjacent municipality, or where a peripheral carrier. authorized to serve only one more point in an outlying area is authorized to serve an adjoining municipality and territories around that point, together with territories situated at some distance on the opposite side of the adjoining municipality, by virtue of the administrative creation of a commercial zone, it would appear that the desirability of uniformity of services in the public interest should be clearly manifested upon the record of that zone proceeding.

Conversely, should the record show that shippers or receivers of motor freight situated at a point or points in an outlying area are adequately served by the existing peripheral motor carrier, or carriers, the competitive soundness of authorizing a multitude of carriers, already certificated to serve the adjoining municipality or other more distantly situated territories, to likewise serve such shipper or shippers at these outlying points, should be clearly evidenced upon the record to be in the public interest by reason of uniformity or for other substantive reasons.

Although intrastate motor carrier certificates can not be capitalized as a matter of law in Ohio, practicably many certificates possess a real and recognized monetary value, and, accordingly, may be transferred and sold for a substantial consideration. A recently acquired peripheral certificate may accrue, therefore, considerable value merely through the administrative stroke of a pen ordering the establishment of a commercial zone. On the other hand, a holder of a peripherally located certificated authority could be just as suddenly burdened with real financial adversities through unsound competition by the same or like administrative inclusion of that point or area presently served by it within a newly created or enlarged commercial zone.

It is axiomatic that some inequities will arise under most existing laws and administrative rulings. The Legislature has delegated to The Public Utilities Commission, wide and sweeping powers in the creation of commercial zones, even to the extent of authorizing the Commission to establish zones without the formalities of hearings or the taking of evidence. See BEITER LINES v. P. U. C. O., supra. The exercise of this power, no doubt, is deemed to be administratively necessary; nonetheless, such power should be exercised by the Commission with discretion and considerate care because of its direct effect upon both the public and motor transportation interests involved. Hence, the Commission's determinations in each commercial zone case should be predicated upon both the facts applicable to that zone proceeding and the relationship of those particular facts to this State's transportation policy as set forth in above-cited §4921.03 R. C. This cannot be done, nor much less guaranteed, by a fixed policy of automatic reciprocity.

It is submitted, however, that the foregoing can be effectively accomplished by the Commission through adding to Rule No. 28 of Administrative Order No. 155 the amendatory qualification that reciprocal rights will generally be granted to all carriers affected by the establishment of a commercial zone except where the Commission is of the opinion the facts of a particular zone case evince that the public interest would not be served by such granting of reciprocity in whole or in part. It is believed that such an amendment to Rule No. 28, especially when related and considered with the Commission's newly expressed views in these majority opinions calling for some showing of demands for motor transportation service by the shipping public to substantiate the establishing and geographical scope of each proposed commercial zone, will lay a sounder foundation for a general policy of granting reciprocal rights to carriers affected by the creation of commercial zones.

**Thirdly,** it is to be noted that aforesaid Rule No. 28 sets forth the following policy with respect to existing restrictions contained in the certificates of carriers affected by the establishment of commercial zones, to-wit:

"No restrictions of any kind shall be imposed upon the authority of carriers located in a commercial zone to serve that zone other than those restrictions and limitations already contained in their specific certificates. No restrictions contained in existing certificates shall be

removed or changed by virtue of the establishment of a commercial zone."

Should these quoted provisions be literally construed and applied to the **Niles Commercial Zone Matter,** Case No. 26,094, one of the three proceedings here involved, the existing certificates of the peripheral motor carriers in that case which expressly restrict those carriers from serving the City of Niles, except for shipments from or to the City of Warren, would preclude the granting to those peripheral carriers of reciprocal rights to serve the municipality of Niles.

The Commission, of course, intended the above quoted provision to apply **only** to commodity restrictions, otherwise said provisions would be in direct contravention of the Commission's fixed policy of automatic reciprocity.

It is respectfully recommended, therefore, that the Commission consider the feasibility of amending these particular provisions of Rule No. 28 so as to make them clearly applicable only to commodity restrictions.

**Fourthly,** concurrence should be expressed in the conclusion of the majority's opinions that the Commission possesses statutory authority to grant reciprocity or reciprocal rights to all motor carriers affected by the establishment or enlargement of commercial zones.

However, in addition to the construction of the majority's opinions that such authority is set forth expressly in the enabling statute, §4921.26 **R. C.,** it would appear that such authority may well be implicitly encompassed within this State's transportation policy as decreed by §4921.03 **R. C.,** especially when that statute is read in **pari materia** with enabling §4921.26 **R. C.**

Thus, in conclusion, I concur in the majority's opinions in the three cases here in issue, subject to the explanatory review and qualifications above set forth.

Respectfully submitted,
Everett H. Krueger, Jr.,
Chairman

Entered in the Journal:
August 12, 1957

## SUPPLEMENTAL ORDER

No. 26094.   Decided August 27, 1957.

The Commission after reviewing its order made and entered herein August 12, 1957, in the above entitled proceeding, finds that there is an error on page 7 of said order. Upon the Commission's own motion and for the purpose of correcting said clerical error, it is

ORDERED, That the order made and entered herein August 12, 1957, be, and hereby the same is, modified and amended by correcting the number, as shown in the order, of the Certificate held by a carrier authorized to serve the Niles, Ohio, Commercial Zone, the correct Certificate number being No. 1692-I instead of No. 1092-I. It is, further

ORDERED, That the said order of August 12, 1957, in all other respects remains in full force and effect. It is, further

ORDERED, That a copy of this order be forthwith served upon all parties heretofore served with a copy of the order made and entered August 12, 1957.

THE PUBLIC UTILITIES COMMISSION OF OHIO

Entered in the Journal
August 27, 1957
A true copy:
James L. Fullin, Jr., Ass't. Secretary

Everett H. Krueger, Jr., Chairman
Ralph A. Winter
Edward J. Kenealy
Commissioners